**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| TOLL BROS., INC., et al, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 10-4843 |
| v. | : | **OPINION** |
| THE TOWNSHIP OF MOORESTOWN, et al, | : | |
| Defendants. | : | |

_____

**RODRIGUEZ, J.**

Presently before the Court is a motion filed by Defendants Township of Moorestown and the Mayor and Council of the Township of Moorestown to dismiss the Complaint of Plaintiffs Toll Brothers, Inc. and Laurel Creek, L.P. pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. Entry No. 8].  The Court has considered the written submissions of the parties and heard oral argument on the motion on March 17, 2011.  For the reasons stated below, Defendants' motion will be granted in part and denied in part.

### I. Background

For the purpose of deciding this motion to dismiss, the facts alleged in the Complaint are accepted as true.  Toll Brothers, Inc. and Laurel Creek L.P. (collectively referred to as "Toll") are real estate developers engaged in the business of developing and constructing residential and non-residential projects in the State of New Jersey. (Compl., ¶¶ 1-2.)  The Township of Moorestown is a municipality in the State of New Jersey and the Mayor and Council of the Township of Moorestown are the governing body thereof (collectively referred to as "Moorestown" or "Township").  (Id. at ¶¶ 3-4.)

Moorestown operates a public water system pursuant to N.J. Stat. Ann. § 40:62-1 et seq. ("Water System"). (Id. at ¶ 8.) The Moorestown water supply is derived from wells owned and operated by the township and from water received from New Jersey American Water Company ("NJAWC"). (Id. at ¶ 9.) The terms and conditions relative to the water provided by NJAWC are governed by a contract between Moorestown and NJAWC ("Water Contract"). (Id. at ¶ 12.) The water supplied to Moorestown by NJAWC is provided through an existing interconnection between the Water System and a water line owned and operated by NJAWC ("First Interconnection"). (Id. at ¶ 10.)

Toll owns a tract of land located in Moorestown, referred to as the Mews Property. (Id. at ¶¶ 6, 19, 92.) Toll seeks to construct an age-qualified residential development on the Mews Property consisting of one hundred twenty-two (122) units and related facilities and infrastructure.[1] (Id. at ¶ 19.) On or about May 9, 2002, Toll applied for Preliminary and Final Subdivision Approval, Preliminary and Final Major Site Plan Approval, and Minor Site Plan Approval necessary to begin construction on the Mews Property. (Id. at ¶ 21.) The Moorestown Planning Board approved the application on March 6, 2003, subject to certain conditions of approval. (Id. at ¶¶ 21, 23.) One of the conditions provided that "[Toll] shall construct any and all necessary improvements, including remedial work, to the township water system or pay a pro-rata share of the improvements as determined by the Township Engineer . . . ." ("Water Condition"). (Id. at ¶ 24.)

---

[1]     Toll also owns and seeks to develop an adjacent tract of land, referred to as the Commercial Property, in concert with development of the Mews Property. Because the parties refer almost exclusively to the development of the Mews Property and for simplicity, development of the Commercial Property is not discussed specifically.

Moorestown's water supply requirements are governed by regulations promulgated by the New Jersey Department of Environmental Protection ("NJDEP"). NJDEP regulations require all developers to obtain an NJDEP Bureau of Safe Drinking Water ("BSDW") permit prior to connecting any development project to a township's water system.  (Id. at ¶¶ 16-17.)  NJDEP will not issue a BSDW permit unless provided with a firm capacity and water allocation analysis demonstrating that the servicing township has sufficient water supplies.  (Id. at ¶ 18.)

Toll challenged the legality of the Water Condition in the Superior Court of New Jersey, Law Division, Burlington County.  On July 26, 2004, the Superior Court invalidated the Water Condition and directed the Planning Board to revise the Water Condition to limit Toll's responsibility to its pro-rata share of off-tract improvements. (Id. at ¶ 28.)  On September 2, 2004, the Planning Board revised the Water Condition such that Toll would be required to either pay its pro-rata share of the cost of any off-tract improvements necessitated by construction of the Mews Property or construct all off-tract improvements with the right to recapture any amount expended in excess of its pro-rata share ("Revised Water Condition").  (Id. at ¶ 29.)

The Planning Board conducted a hearing on October 28, 2004 to determine the scope of Toll's off-tract obligation and determined that the Mews Property required construction of a second interconnection to alleviate water pressure concerns ("Second Interconnection").  (Id. at ¶¶ 30-31.)  By resolution adopted December 9, 2004, the Planning Board required Toll to construct the Second Interconnection as a condition to the issuance of any certificate of occupancy, subject to Toll's right to recapture any amounts in excess of its pro-rata share of the improvements.  (Id. at ¶¶ 33-35.)

3

According to the report of the Township Engineer, the estimated cost of construction of the Second Interconnection was $980,000. (Id. at ¶ 36.) Toll filed a second complaint against Moorestown in Superior Court, contending that the Revised Water Condition remained unlawful. (Id. at ¶ 42.) On July 27, 2005, the Court invalidated the Revised Water Condition and remanded the issue back to the Planning Board to determine the amount of Toll's pro-rata share of the off-tract improvements. (Id. at ¶ 43.)

On August 11, 2005, the Planning Board adopted the Final Water Condition, which limited Toll's obligation for off-tract water system improvements to its pro-rata share of the Second Interconnection or such other improvements necessitated by the construction of the Mews Property and conditioned the issuance of any construction permits on such payment. (Id. at ¶ 44.) Thereafter, Toll requested that Moorestown provide Toll with its pro-rata assessment for the costs of improvements. (Id. at ¶ 52.) Moorestown responded that it could not provide the pro-rata assessment until plans were developed for the construction of the Second Interconnection. (Id. at ¶ 54.)

On January 22, 2008, Toll filed a third complaint against Moorestown in New Jersey Superior Court, in an effort to compel Moorestown to provide water service to the Mews Property ("Water Litigation"). (Id. at ¶ 57.) At that time, the parties were engaged in litigation regarding the return of the balance of a performance bond posted by Toll in connection with a prior residential project ("Bond Litigation") and litigation regarding property tax responsibilities for other Toll properties within the township ("Tax Appeals"). (Id. at ¶¶ 58-60.) On May 1, 2008, Moorestown informed the court that discussions had progressed with NJAWC and that it did not foresee any insurmountable obstacles concerning construction of the Second Interconnection and

4

requested that the matter be placed on hold while the parties sought resolution of the matter.  (Id. at ¶ 64-65.)  In January 2009, Toll and Moorestown entered into a settlement agreement to resolve the pending litigation between the parties ("Settlement Agreement").  (Id. at ¶ 68.)  The Agreement contained a provision that stated:

> [Moorestown] has implemented a procedure whereby a proposed project, such as the Mews Project, shall be required to pay a designated fee to ensure that sufficient water is reserved for the given project at such time as an application is made by a developer for a water main extension permit.

(Id. at ¶ 69.)  The Settlement Agreement also provided that:

> The purpose of this Agreement is to allow for an amicable settlement of the Tax Appeals and Bond Litigation.  It is understood by the parties that although the Water Litigation is not settled as a result of this Agreement, the Water Litigation shall be dismissed without prejudice with the Parties preserving all rights and defenses in connection with the Water Litigation.

(Compl., Ex. K, p. 4.)   Following execution of the Settlement Agreement, Toll indicated to Moorestown that it was prepared to proceed with a reservation of necessary water resources for the Mews Property.  (Compl., ¶ 75.)  By letter dated April 16, 2010, Moorestown informed Toll that it would not purchase the additional water required to service the Mews Project due to the cost that would be incurred to comply with NJDEP requirements.  (Compl., Ex. L.)  Specifically, Moorestown informed Toll as follows:

> Your client's projected water usage is 32,660 gpd.  To satisfy that project demand, the Township must have triple that amount, or nearly 98,000 gpd of water available.  Since under NJDEP's other calculations, NJDEP has determined that insufficient firm capacity exists from internal sources, Moorestown would have to purchase an additional 98,000 gpd of water from NJAWC to satisfy NJDEP requirements for [Toll's] development.  At a tariff rate of $5.74 per thousand gallons, the cost to the Township to buy water for your client's development would be over $205,000 per year, each and every year.  Since the Township has enough water from its own sources and the existing interconnection to satisfy [Toll's] projected uses, the additional gallons would merely represent the purchase of a "paper allocation" of water that would never be needed.  Thus, the Township

5

would be subsidizing [Toll's] development to the tune of over $205,000 per year, which it will not do.

(Id.)  In a letter dated August 25, 2010, Moorestown again informed Toll that it would not enter a water reservation agreement with Toll.  (Compl., Ex. N.)  The letter reiterated that Moorestown did not intend to enter into a water agreement with Toll due to the fact that Moorestown did not know how long it would be required to purchase additional water from NJAWC and suggested that Toll enter an agreement directly with NJAWC to provide water to the Mews Property.  (Id.)

Toll filed suit against Moorestown in this Court on September 20, 2010.  Toll alleges that Moorestown can simply amend the Water Contract with NJAWC by discontinuing its purchase of water at retail rates and beginning to purchase at commodity demand, which would enable Moorestown to increase its water supplies to service the Mews project without increasing the amount of money Moorestown would be obligated to pay NJAWC.  (Id. at ¶¶ 83-85.)  Toll claims that Moorestown has taken necessary steps to ensure that water supplies were made available to all other water users and has not denied water service to any other applicant since Toll began efforts to develop the Mews Property in 2003.  (Id. at ¶ 86.)  Toll alleges that Moorestown's refusal to secure sufficient water supplies is the only remaining barrier to construction of the Mews Property.  (Id. at ¶¶ 87-89.)  Accordingly, Toll contends that Moorestown's refusal is part of a consistent and intentional course of conduct aimed at preventing Toll from developing the Mews Project.

Toll's Complaint asserts seven claims: (1) violation of equal protection under the United States Constitution; (2) violation of equal protection under the New Jersey

Constitution; (3) deprivation of substantive due process; (4) fraud; (5) breach of duty to serve; (6) breach of contract; and (7) unlawful taking under the United States Constitution and New Jersey Constitution.  Moorestown now moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 over Toll's constitutional claims. The court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II.  Standard of Review

### A.    Rule 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain only a "short plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff is not required to plead evidence.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). However, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).

When reviewing a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (internal

quotations omitted).[2]  The question is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007).  Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

To determine the sufficiency of a complaint, the Third Circuit has held that the Court must conduct a three-step test.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Iqbal, 129 S. Ct. at 1947.  Next, the Court must separate the factual allegations from the legal conclusions.  Id. at 1950.  While the well-pleaded facts are accepted as true, legal conclusions are not entitled to the assumption of truth.  Id.  Last, the Court must determine whether the well-pleaded, non-conclusory factual allegations "plausibly give rise to an entitlement to relief."  Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1949.  Therefore, the complaint must do more than allege

---

[2]     "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).  Further, "courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document." Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 781 (W.D. Pa. 2000) (citing Pension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir.1993)).  This exception prevents a plaintiff with a legally deficient claim from surviving a motion to dismiss by failing to attach a dispositive document on which it relied.  Id.

the plaintiff's entitlement to relief; it must "show" such an entitlement.  Fowler, 578

F.3d at 211. "[W]here the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]

that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P.

8(a)(2)).  Ultimately, assessing plausibility is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Fowler, 578 F.3d

at 211 (quoting  Iqbal, 129 S. Ct. at 1949).

> **B.    42 U.S.C. § 1983**

Three of Toll's claims assert Constitutional violations.  Toll alleges that

Moorestown's refusal to provide water service constitutes a violation of Toll's equal

protection and substantive due process rights under the Fourteenth Amendment and an

unconstitutional governmental taking under the Fifth Amendment.  These claims are

brought pursuant to 42 U.S.C. § 1983, which provides a civil remedy against any person

who, under color of state law, deprives another of rights protected by the United States

Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).[3]  Section

1983 is a remedial statute designed to redress deprivations of rights secured by the

Constitution and its subordinate federal laws.  See Baker v. McCollan, 443 U.S. 137, 145

---

[3]         The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . ., subjects, or causes to be subjected, any
> citizen of the United States . . . to the deprivation of any rights, privileges
> or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding
> for redress. . . .

42 U.S.C. § 1983 (2000).

n.3 (1979).  By its own words, therefore, Section 1983 "does not . . . create substantive rights."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing McCollan, 443 U.S. at 145 n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Thus, a plaintiff must demonstrate two essential elements to maintain a claim under Section 1983: (1) that the plaintiff was deprived of a "right or privilege secured by the Constitution or laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law.  Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989).  Because Moorestown does not challenge that the alleged deprivation of rights was committed under the color of state law, only the tenability of the alleged violations are addressed.

## IV. Discussion

### A. Count One - Fourteenth Amendment Equal Protection

Count One alleges that Moorestown's refusal to extend water service to Toll while providing water to all other applicants constitutes a violation of Toll's right to equal protection under the United States Constitution.  The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction, the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a

statute or by its improper execution through duly constituted agents." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564  (2000) (per curiam).  Although the Equal Protection Clause typically focuses on impermissible governmental classifications of groups, an individual plaintiff may assert an equal protection claim, under a "class of one" theory, by alleging that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 245 (3d Cir. 2008) (quoting <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006)).

The Third Circuit has noted that "[o]ur court has not had the opportunity to consider the equal protection 'class of one' theory at any length." <u>Hill</u>, 455 F.3d at 239. However, the Circuit has stated that to be similarly situated, parties must be "alike in all relevant aspects." <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotations omitted).  A plaintiff must "demonstrate that it was treated differently than someone who is prima facie identical in all relevant respects." <u>ABD Monroe, Inc. v. Monroe Twp.</u>, Civ. No. 04-1412, 2008 WL 58876, at *9 (D.N.J. Jan. 3, 2008) (citing <u>Purze v. Village of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir.2002)); <u>see also</u> <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006) (noting that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves").  As such, a plaintiff asserting a class-of-one equal protection claim in the context of a traditional zoning dispute ultimately bears a heavy burden to prevail.  <u>See</u> <u>Eichenlaub v. Twp. of Indiana</u>, 385 F.3d 274, 287 (3d Cir. 2004) (citing <u>Olech</u>, 528 U.S. at 565-66) (Breyer, J., concurring).

At the pleading stage, "general accusations and the invocation of the Equal Protection Clause are not enough." Phillips, 515 F.3d at 243-45.  However, "[s]tandards of pleading are not the same as standards of proof." Id. at 246.  Therefore, although class-of-one plaintiffs in the land use context may "face[] a significant hurdle in finding evidence to prove their allegations of selective enforcement and unequal treatment, such concerns should not defeat their claim at the pleading stage." Id. at 245   To survive a motion to dismiss, the complaint must merely contain sufficient allegations of the existence of similarly situated individuals to nudge the claim across the line from conceivable to plausible.  See Mann v. Brenner, 375 Fed. App'x 232, 238-39 (3d Cir. 2010) (citing Iqbal, 129 S. Ct. at 1951); see also LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 942 (7th Cir. 2010)  (noting that whether another is similarly situated is "usually a question for the fact-finder" and dismissal at the pleading stage is only appropriate when the complaint failed to allege facts tending to establish the existence of others similarly situated).

Under the heightened pleading standard articulated in Twombly and Iqbal, the Third Circuit has held that a plaintiff's "bald assertions that the defendants violated his right to equal protection because 'he was selectively and vindictively cited and prosecuted by the City in an effort to force him into cooperation with York College' . . . 'amount to nothing more than a formulaic recitation of the elements' of a constitutional discrimination claim.'" Mann, 375 Fed. App'x at 239 (internal quotations omitted). Similarly, in a recent unpublished opinion, the Third Circuit held that a developer who was denied a sewer easement from the township failed to adequately plead a class-of-one claim because he "simply alleged that he was treated differently from 'other

similarly situated residential and commercial developers.'" <u>Perano v. Twp. of Tilden</u>, 2011 WL 1388381, *4 (3d Cir. Apr. 13, 2011).  Importantly, neither <u>Mann</u> nor <u>Perano</u> disturbed the articulation of the pleading requirements for a class-of-one claim set forth in <u>Olech</u>.  Rather, these cases only reinforce the proposition that a complaint devoid of factual enhancement of the alleged inequitable treatment has not made plausible a claim for relief.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.

Here, Toll alleges that it "is similarly situated to all other persons located within the Township that have been provided adequate water supplies to service their respective properties." (Compl., ¶ 101.)  Unlike in <u>Mann</u> and <u>Perano</u>, Toll has supported its class-of-one claim with detailed factual allegations that document a consistent and deliberate pattern of disparate treatment from other water users within Moorestown's water franchise area.  (<u>See</u> Compl., ¶¶ 47, 55, 67, 86.)  Specifically, Toll states that in 2005, "[a]lthough Toll was prohibited from moving forward because of alleged water pressure problems . . . , the Township continued to approve other applications for water service within the Township, which approvals impacted both the available water supply . . . and the sufficiency of the water pressure within the Township Water System." (<u>Id.</u> at ¶ 47.)  Next, Toll documents further treatment in 2007:

> Despite not providing Toll with its pro rata assessment and allowing Toll to satisfy the terms of the Final Water Condition, the Township continued to approve land use projects and additional connections to the Township Water System without requiring such applicants to await the construction of the Second Interconnection or require such applicants to contribute their respective, pro rata shares . . .

(<u>Id.</u> at ¶ 55.)  Lastly, Toll alleges that Moorestown has the ability to purchase water supplies from NJAWC, which would enable the township to increase its water supply so

that it can service the Mews Property without increasing the amount of money owed by Moorestown pursuant to the NJAWC contract.  (Id. at ¶ 85.)  However, "[d]espite the foregoing and contrary to what it has done for other developers and/or water users, the Township has refused to acquire sufficient water supplies from NJAWC." (Id. at ¶ 86.) Toll also alleges that there is no rational basis for Moorestown's actions because the township can amend its contract with NJAWC to provide the necessary water supplies at no additional cost, as it has done with every other developer seeking water access to date.  (Compl., ¶¶ 79-86.)[4]

Toll presents sufficient factual support to make plausible the conclusion that it has been irrationally and arbitrarily treated differently from similarly situated water users.  See Iqbal, 129 S.Ct. at 1949.  Therefore, Count One will not be dismissed.

### B.    Count Two - New Jersey Constitution Equal Protection

Count Two asserts a violation of Toll's right to equal protection under the New Jersey Constitution.  Article 1, Paragraph 1 of the New Jersey Constitution provides that: "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  N.J. Const., Art. 1, para. 1 (1947).  The New Jersey Constitution is not a mirror image of the United States Constitution.  "Nonetheless, article 1, paragraph 1, like the fourteenth amendment, seeks to protect against injustice and against the unequal

---

[4]    To the extent that Moorestown argues that its disparate treatment is justified by legitimate municipal spending concerns, the sufficiency of that justification is not properly addressed at this stage in the litigation.  See D.O. ex rel. C.O. v. Borden, No. 10-2339, 2011 WL 1326047, at *6 & n.8 (D.N.J. Mar. 31, 2011).

treatment of those who should be treated alike."  Greenberg v. Kimmelman, 494 A.2d 294, 302 (N.J. 1985).  The New Jersey Supreme Court has rejected the mode of analysis used to evaluate federal equal protection claims in favor of a more flexible balancing test.  Barone v. Dept. of Human Servs., 526 A.2d 1055, 1062 (N.J. 1987).  In striking the balance, New Jersey Courts consider "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction."  Id.

"To a large extent, the considerations guiding our equal protection analysis under the New Jersey Constitution are implicit in the three tier approach applied by the Supreme Court under the Federal Constitution."  Id.  Therefore, "[a]lthough stated differently, an equal protection analysis of rights under article I, paragraph 1 of the New Jersey Constitution, like an analysis of equal protection . . . under the fourteenth amendment of the United States Constitution, may lead to the same results."  Brown v. City of Newark, 552 A.2d 125, 130 (N.J. 1989).  Therefore, because Toll sufficiently pleads a federal equal protection violation, it likewise states a plausible claim under article 1, paragraph 1 of the New Jersey Constitution.  Therefore, Count Two will not be dismissed.

### C.    Count Three - Substantive Due Process

Count Three  alleges that Moorestown's conduct violates Toll's right to substantive due process.  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To properly plead a substantive due process claim, a plaintiff must allege a deprivation of a protected property interest by government conduct that "shocks

15

the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); United Artists
Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003). "Whether
an incident 'shocks the conscience' is a matter of law for the courts to decide." Benn v.
Universal Health Sys., 371 F.3d 165, 174 (3d Cir. 2004). "While there is no calibrated
yard stick to determine whether challenged actions shock the conscience, the standard
encompasses only the most egregious official conduct." Cherry Hill Towers, L.L.C. v.
Township of Cherry Hill, 407 F. Supp. 2d 648, 655 (D.N.J. 2006) (internal citations
omitted).

    "Land-use decisions are matters of local concern and such disputes should not be
transformed into substantive due process claims based only on allegations that
government officials acted with 'improper' motives." United Artists, 316 F.3d at 402.  In
the land-use context, limiting substantive due process claims to only the most egregious
behavior prevents federal courts from "being cast in the role of a zoning board of
appeals." Chainey, 523 F.3d at 219-20 (3d Cir. 2008) (quoting United Artists, 316 F.3d
at 402).  Because "every appeal by a disappointed developer from an adverse ruling of
the local planning board involves some claim of abuse of legal authority, . . . it is not
enough simply to give these state law claims constitutional labels . . . in order to raise a
substantial federal question under section 1983." United Artists, 316 F.3d at 402.

    The Third Circuit has held that inconsistent application of zoning requirements,
delaying permits and approvals, improperly increasing tax assessments, and maligning
and muzzling a property owner, without more, is not the type of behavior that shocks
the conscience.  Id.  To shock the conscience, the complained of behavior must be
coupled with allegations of corruption, self-dealing, unconstitutional "taking," ethnic

16

bias, or interference with otherwise constitutionally protected activity.  Eichenlaub, 385 F.3d at 286.

Moorestown argues that even if Toll has alleged the existence of a protectable right, it has failed to allege conduct that shocks the conscience.  (Def.'s Br., p. 19.)  Toll contends that Moorestown's seven year history of "arbitrary, capricious, and irrational behavior" which has cost Toll millions of dollars is sufficiently "conscience shocking" to sustain a due process claim.  (Pl.'s Br., pp. 24-25.)  In particular, Toll points to the following conduct:

> (1)  years of litigation over water conditions imposed by the Township which were struck down as arbitrary, capricious, and unreasonable in state court . . .
> (2)  years of promising to provide water service to Toll . . .
> (3)  exorbitant sums of money spent by Toll in reliance of the Township's promises an in pursuit of development consistent with the zoning and Township approval for Toll's property . . .
> (4)  the Township providing water service to similarly situated property owners within the Township . . .
> (5)  convincing Toll to dismiss the third Water Complaint by promising Toll that it would provide Toll with water service, only to blatantly renege on that promise, after Toll expended even more money on moving forward with the project . . .

(Id.)  Thus, the gravamen of Toll's substantive due process claim is the irrational and disparate treatment of Toll in comparison to other potential water users.  Toll does not allege behavior typified by corruption, self-dealing, or infringement of fundamental individual liberties.  Although Moorestown's behavior of continually delaying and maligning Toll's efforts at every turn may have been arbitrary, irrational, and tortious, the facts alleged do not rise to the level of "the kinds of gross misconduct that have shocked the judicial conscience."  Eichenlaub, 385 F.3d at 285.  Therefore, Toll has failed to allege a substantive due process claim and Count Three will be dismissed.

### D.  Count Four - Fraud

Count Four alleges a claim of common law fraud based on representations made by Moorestown to Toll during settlement discussions related to the previous state litigation.  To establish a cause of action for fraud in New Jersey, "a plaintiff must prove (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The facts alleged must "place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)).  A plaintiff can satisfy the requirements of Rule 9(b) by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  Lum, 361 F.3d at 224 (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  A plaintiff must also "allege who made a representation to whom and the general content of the misrepresentation."  Id.

The Township moves to dismiss Count Four on the grounds that "Plaintiffs have not pled the dates, times, representatives alleged to have made the statements, or the specifics of the statements allegedly made, and therefore, do not meet the heightened pleading standard required by Fed. R. Civ. P. 9(b)."  (Def.'s Br., p. 23.)  However, Toll's

18

allegations inject sufficient precision to survive dismissal.  Specifically, Toll alleges that:

> In executing the 2009 Settlement Agreement and in meetings prior to the execution of that Agreement, representatives of the Township repeatedly advised Toll that water supplies could and would be made available to the Mews through execution of a contract amendment with NJAWC in the same manner has [sic] the Township had done with others.

(Compl. at ¶ 120.)  Toll further alleges generally that Moorestown knew these representations were false, with the intent that Toll would dismiss the Water Litigation in reliance on these allegations, and that Toll did in fact rely on these representations in dismissing the litigation.  (Id. at ¶¶ 121-23.)  Thus, Toll has stated the circumstances constituting the alleged fraud with the requisite particularity to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  Accordingly, Count Four will not be dismissed.

### E.      Count Five - Duty to Serve

Count Five alleges simply that Moorestown "has a duty to provide water to users within their [sic] franchise area."  (Compl., ¶ 128.)  The Complaint provides no factual support for this contention.  However, Toll contends that Count Five should not be dismissed because "the Township has arbitrarily decided not to provide water service to Toll, while still allowing other current and new users to access the water system."  (Pl.'s Br., p. 31.)  Toll argues that this claim finds support in the proposition that "[t]here is a denial of the equal protection of the laws unless the water service be available to all in like circumstances upon the same terms and conditions, although the rule of equality may have a pragmatic application.  Persons situated alike shall be treated alike." Reid Dev. Corp. v. Twp. of Parsippany-Troy Hills, 89 A.2d 667, 669 (N.J. 1952).  The court in Reid relied upon on equal protection jurisprudence of both the United States and New Jersey Constitutions in formulating its holding.  See id.

The true nature of Toll's "duty to serve" claim is that Moorestown arbitrarily treated Toll differently from other water users in violation of its obligation to treat similarly situated water users equally.  Thus, Count Five is redundant to the claims asserted in Counts One and Two.  Fed. R. Civ. P. 12(f)(1) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter."  As a result, Count Five will be dismissed as redundant.

### F.    Count Six - Breach of Contract

Count Six asserts a breach of contract claim.  Toll alleges that Moorestown's refusal to provide water service to the Mews Project breaches the terms of the 2009 Settlement Agreement and seeks the Court to enjoin Moorestown to take the necessary steps to provide Toll with water supplies.  (Compl., ¶¶ 134-35.)  Moorestown argues that Toll is precluded from asserting the breach of contract claim because it was the subject of a "Motion in Aid of Litigants Rights to Enforce Terms of Settlement Agreement Entered Into Between Parties" which was filed by Toll in Superior Court on May 26, 2010.  In the motion, Toll argued, as it does here, that the language of the Settlement Agreement required Moorestown to purchase the necessary water supply for the Mews Property.  Toll also sought an order directing Moorestown to take necessary steps to increase its water supply by modifying the NJAWC contract and to commence construction of the Second Interconnection.  The state court denied Toll's motion on August 18, 2010.  Therefore, Moorestown argues that the present claim is barred by the doctrine of res judicata.  (Def.'s Br., pp. 24-26.)

Under the Full Faith and Credit Clause of the United States Constitution, "the judicial proceedings of a state court shall have the same full faith and credit within every

court in the United States as they have by law or usage in the courts of the issuing state."
Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 141 (3d Cir. 1999).  The preclusive
effect of a state court judgment in federal court is governed by the law of the rendering
state.  See 28 U.S.C. § 1738.  Therefore, New Jersey law is applicable to the preclusive
effect of the previous state court proceedings on the present claim.

The doctrine of claim preclusion, or res judicata, prohibits a plaintiff from re-
litigating the same claim against the same parties, provided the claims have previously
been "fairly litigated and determined."  First Union Nat'l Bank v. Penn Salem Marina,
Inc., 921 A.2d 417, 423 (N.J. 2007) (emphasis added).  Res judicata only serves to bar a
claim when:

> (1) the judgment in the prior action must be valid, final, and on the merits;
> (2) the parties in the later action must be identical to or in privity with
> those in the prior action; and (3) the claim in the later action must grow
> out of the same transaction or occurrence as the claim in the earlier one.

Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412, 591 A.2d 592 (1991).

The doctrine of issue preclusion, or collateral estoppel, is a branch of the broader
law of res judicata that bars re-litigation of any issue actually determined in a prior
action between the same parties involving a different claim or cause of action.  Sacharow
v. Sacharow, 826 A.2d 710, 719 (N.J. 2003).  The doctrine of collateral estoppel will bar
subsequent re-litigation of an issue only when:

> (1) the issue to be precluded is identical to the issue decided in the prior
> proceeding; (2) the issue was actually litigated in the prior proceeding; (3)
> the court in the prior proceeding issued a final judgment on the merits; (4)
> the determination of the issue was essential to the prior judgment; and (5)
> the party against whom the doctrine is asserted was a party to or in privity
> with a party to the earlier proceeding.

21

First Union Nat'l Bank, 921 A.2d at 424.  A judgment is final for the purposes of issue

preclusion when it is "sufficiently firm to be accorded conclusive effect."  Hills

Development Co. v. Bernards Tp. in Somerset County, 510 A.2d 621, 652 (N.J. 1986).

To determine if the resolution was sufficiently firm to be given preclusive effect, the

reviewing court must consider "whether the parties were fully heard, whether a reasoned

opinion was filed, and whether that decision could have been, or actually was, appealed."

Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1233

n.8 (3d Cir. 1995) (citing In re Brown, 951 F.2d 564, 569 (3d Cir.1991)).  The party

seeking to invoke the doctrine of issue preclusion bears the burden of demonstrating the

firmness of the prior adjudication, and "'reasonable doubts as to what was decided by a

prior judgment should be resolved against using it as estoppel.'"  Sweeney v. Sweeney,

966 A.2d 54, 61 (N.J. Super. Ct. App. Div. 2009) (citing Shtab v. Greate Bay Hotel &

Casino, Inc., 173 F.Supp.2d 255, 261 (D.N.J. 2001))

 A Motion in Aid of Litigants' Rights is a means to compel compliance with a

judicial order or to enforce the terms of a settlement agreement.  See In re New Jersey

State Board of Dentistry, 423 A.2d 640, 642 n. 1 (N.J. 1980); N.J. Rule 1:10-3.

Settlement agreements are contracts and, as such, they are subject to the general

principles of interpretation governing contract law.  Building Materials Corp. of America

v. Certainteed Corp., 273 F. Supp. 2d 552, 553 (D.N.J. 2003); Nolan v. Lee Ho, 577 A.2d

143 (N.J. 1990).  Thus, a motion to enforce a settlement agreement is essentially a claim

for a breach of contract.  Enforcement of a settlement agreement "requires its own basis

for jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994).  A

court has jurisdiction to enforce a settlement agreement when the parties' obligation to

comply with the terms of the settlement agreement are made part of the order of dismissal, "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement ) or by incorporating the terms of settlement agreement in the order." Id. at 381.  Thus, jurisdiction exists only because "a breach of the agreement would be a violation of the order." Id.

Here, the Complaint sufficiently alleges that Moorestown breached the terms of the Settlement Agreement.  The present record is insufficient for making a determination that the Superior Court's denial of Toll's motion in aid of litigant's rights should preclude Toll's breach of contract claim.  Moorestown does not submit evidence, properly considered at the motion to dismiss stage, which demonstrates that the Superior Court retained jurisdiction to enforce the terms of the Settlement Agreement. Further, the Superior Court's August 18, 2010 order is not supported with a reasoned opinion explaining the grounds for denying Toll's motion.  Therefore, Moorestown has not carried its burden of showing that the order sufficiently evidences an adjudication on the merits, which is  necessary for it be given preclusive effect.  As a result, Count Six will not be dismissed.

### G.    Count Seven - Fifth Amendment "Inverse Condemnation" Claim

Count Seven alleges a claim for inverse condemnation.  Toll alleges that Moorestown's refusal to provide water service has deprived Toll of any beneficial use of the Mews Property and that the failure to compensate Toll for this taking is in violation of the New Jersey and United States Constitution.  The Fifth Amendment to the United States Constitution provides that "private property shall not be taken for public use without just compensation." U.S. Const. amend. V.  The language of the Fifth

23

Amendment "prohibits both uncompensated takings and takings for a private purpose." Samaad v. City of Dallas, 940 F.2d 925, 936 (5th Cir. 1991). These prohibitions against governmental takings apply to state and local governments through the Fourteenth Amendment. Kelo v. City of New London, 545 U.S. 469, 472 n.1 (2005).[5]

The Just Compensation Clause of the Fifth Amendment "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 315 (1987). "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985). Therefore, although not a true "exhaustion of state remedies" requirement, a plaintiff must "seek just compensation from the state before claiming that their right to just compensation under the Fifth Amendment has been violated." Cnty. Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 168 (3d Cir. 2006).

The Public Use Clause provides that "one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid." Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 241 (1984)

---

[5]     The New Jersey Constitution similarly provides that: "[p]rivate property shall not be taken for public use without just compensation." N.J. Const. art. I, § 20. The New Jersey Supreme Court has declared that the protection afforded by the New Jersey Constitution is "coextensive" with the protections afforded under the United States Constitution. Mansoldo v. State, 187 N.J. 50, 58, 898 A.2d 1018 (2006); Pheasant Bridge Corp. v. Twp. of Warren, 777 A.2d 334, 343 (N.J. 2001).

(quoting Thompson v. Consol. Gas Corp., 300 U.S. 55, 80 (1937)).  Because a private

taking cannot be constitutional even if compensated, "[a] plaintiff that proves that a

government entity has taken its property for a private, not a public, use is entitled to an

injunction against the unconstitutional taking, not simply compensation."  Carole Media

LLC v. N.J. Transit Corp., 550 F.3d 302, 308 (3d Cir. 2008).  Thus, a plaintiff who

alleges a taking for a private purpose does not need to first exhaust state remedies.  Id.

However, what constitutes a public purpose is defined very broadly and States have

"broad latitude in determining what public needs justify the use of the takings power."

Kelo, 545 U.S. at 480-83.  Further, "the fact that a taking creates incidental benefits for

individual private parties does not condemn that taking as having only a private

purpose."  Carole Media LLC, 550 F.3d at 309 (citing Midkiff, 467 U.S. at 243-44).

Therefore,

> a taking fails the public use requirement if and only if the uses offered to
> justify it are "palpably without reasonable foundation," [Midkiff, 467 U.S.
> at 241], such as if (1) the "sole purpose" of the taking is to transfer property
> to a private party [Kelo, 545 U.S. at 477; Midkiff, 467 U.S. at 245], or (2)
> the asserted purpose of the taking is a "mere pretext" for an actual purpose
> to bestow a private benefit, [Kelo, 545 U.S. at 478].

CBS Outdoor Inc. v. N.J. Transit Corp., No. 06-2428, 2007 WL 2509633, at *13 (D.N.J.

Aug. 30, 2007) (citing Goldstein v. Pataki, 488 F. Supp. 2d 254, 286 (E.D.N.Y. 2007).

Moorestown first argues that Toll's claim must be dismissed as unripe because

Toll has not sought compensation through the State's inverse condemnation procedures.

(Def.'s Br., p. 28.)  New Jersey has adequate post-deprivation procedures, embodied in

the New Jersey Eminent Domain Act of 1971, N.J. Stat. Ann. §§ 20:3-1 et seq.  Because

Toll has not alleged that it has previously pursued a claim for compensation pursuant to

New Jersey's inverse condemnation procedures, it may not seek relief in this Court under the Just Compensation Clause.  See Peduto v. City of N. Wildwood, 696 F. Supp. 1004, 1009 (D.N.J. 1988).  Toll argues that the exhaustion of remedies prohibition does not apply here  because "Toll has alleged that the Township refusal to provide water service to Toll is to benefit water users and private property owners within the Township."  (Pl.'s Br., p. 35.)  Toll further contends that "[t]here is no 'public' benefit here, but rather, it is strictly and wholly for the 'private' benefit of not having to raise water rates of other property owners . . . ."  (Id. at p. 36.)  However, Toll does not allege facts in the Complaint that tend to show that Moorestown's actions were made with the sole purpose of taking Toll's property to bestow a benefit on another private party. Therefore, Toll fails to allege a plausible inverse condemnation claim and Count Seven will be dismissed.

## IV.  Conclusion

For the reasons expressed above, Moorestown's motion to dismiss will be granted in part and denied in part.  Toll's substantive due process claim (Count Three), duty to serve claim (Count Five), and inverse condemnation claim (Count Seven) will be dismissed.  Toll's equal protection claims (Counts One, Count Two), fraud claim (Count Four), and breach of contract claim (Count Six) will not be dismissed.  The Court will issue an appropriate order.

Dated: June 27, 2011

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
United States District Judge

26